02-10-319-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00319-CR

 

 


 
 
 Steven Bishop
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM THE 16th
District Court OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          A
jury found Appellant Steven Bishop guilty as charged in the indictment of felony
assault on a family or household member, having been previously convicted of
assault against a family member.  See Tex. Penal Code Ann. § 22.01(b)
(West 2011).  In four points, Bishop argues that the trial court erred by
failing to instruct the jury on the proper use of his stipulation to his prior
assault-family violence conviction and by giving an incorrect parole law
instruction and that he suffered egregious harm from those charge errors.  Because
the record does not demonstrate egregious harm related to either of his
jury-charge complaints, we will affirm.

II.  Factual And Procedural Background

          Bishop
and Tammy Vaughn were in a relationship.  One day while the two were at a
laundromat, Tammy received a cell phone call from a male friend, Gabe.  Bishop became
angry, started yelling, and grabbed Tammy’s arms and neck.  Gabe called Tammy’s
brother Billy and told him about the incident; Gabe said he had overheard Tammy
screaming for help, gasping for air, and begging Bishop to stop.  Gabe told
Billy that Bishop had choked Tammy until she had passed out.

          Billy,
along with his friend and his friend’s girlfriend, went to the apartment
complex where Tammy and Bishop lived.  Billy saw Tammy and Bishop in Bishop’s truck;
Tammy was crying and looked terrified, and Bishop was holding on to her shirt.  Bishop
got out of the car, and he and Billy began fighting.  Billy told Tammy to get
in his vehicle, Tammy complied, and Billy got in his vehicle and drove off.  Tammy
was shaking and crying, and she told Billy that Bishop had choked her until she
had passed out.  Billy saw red marks on Tammy’s neck.

          Denton
Police were dispatched to the scene, and Bishop told police that he and Tammy
had been in an argument and that Tammy had left with some other people.  Denton
Police Officer Lori Luce pulled over Billy’s car, and spoke to Tammy, Billy,
and the other two passengers individually.  Tammy was very upset and told
Officer Luce that Bishop had put his hand around her neck, had choked her, and had
pushed her against a wall and that she had lost her breath as a result.  Officer
Luce saw red marks on Tammy’s neck consistent with finger marks.  Tammy
demonstrated to Officer Luce how Bishop had choked her.

          Tammy’s
mother and sister arrived at some point, and Tammy told her sister that Bishop
had choked her.  Tammy’s sister also saw red marks on Tammy’s neck and
collarbone.  Tammy agreed to go to the police station to provide a statement
and to have photographs taken of her neck.  She rode with her mother and
sister.  When they arrived at the station, Tammy’s level of cooperation had changed.
 She agreed to have photographs taken, but she refused to make a written
statement because she feared what Bishop would do.

Several
days after the incident, the Denton County District Attorney’s Office received
a letter, purportedly written by Tammy but actually written by Bishop, stating
that he had not touched her and that he was a “good man.”  The letter stated
that Tammy’s red spots were from “stressing over the yelling” and that Tammy
had “over-reacted.”

          About
a month after the incident, Tammy signed an affidavit of nonprosecution,
stating that the verbal statement she had given police was false and that Bishop
had never touched her.  Tammy also sent an email to the district attorney’s
office requesting that the charges against Bishop be dismissed.

          Prior
to trial, someone using Bishop’s name and pin number made a call from jail to
Tammy.  Investigator Christie Perry with the Denton County District Attorney’s office
listened to a recording of the call and heard the caller tell Tammy that “they
ain’t got shit” and could not convict him without her testimony.  Tammy later
told Investigator Perry that nothing had happened between her and Bishop on the
date in question.

          On
the day of Bishop’s trial, Tammy was shaking and crying.  She told Investigator
Perry that she did not want to testify because “she’s scared to death as to
what could happen if [Bishop] doesn’t get convicted.”

          At
trial, the State offered into evidence Bishop’s stipulation to his prior assault-family
violence conviction.  Bishop did not object to the evidence or request a
limiting instruction, and the trial court admitted the stipulation into
evidence.  The trial court’s charge on guilt/innocence instructed the jury to
find Bishop guilty of felony assault if it found that he 

intentionally,
knowingly, or recklessly cause[d] bodily injury to Tammy Bryant, a member of
the defendant’s family or household by grabbing, choking and strangling Tammy
Bryant with defendant’s hand, as alleged in the indictment, and if [it] further
[found] from the evidence beyond a reasonable doubt that the defendant,
previously thereto, had been convicted of the offense of assault against a
member of the defendant’s family or household under Section 22.01, Penal Code,
in that on the 20th day of May, 2005, in cause number CR-2004-02307-A, styled
“The State of Texas vs. Steven Bishop” on the docket of the County Criminal
Court No. 1 of Denton County, Texas. 

The
court’s charge on guilt/innocence did not reference Bishop’s stipulation to his
prior assault-family violence.  Bishop made no objections to the charge.  The
jury found him guilty.

Bishop
pleaded true to the two prior felony sentence enhancements, which increased his
punishment range to twenty-five to ninety-nine years’ or life imprisonment.[2] 
The jury assessed Bishop’s punishment at eighty years’ imprisonment.  The trial
court sentenced him accordingly.  

III.  Standard
of Review

In
our review of a jury charge, we first determine whether error occurred; if
error did not occur, our analysis ends.  See Abdnor v. State, 871 S.W.2d
726, 731–32 (Tex. Crim. App. 1994); see also Sakil v. State, 287 S.W.3d
23, 25–26 (Tex. Crim. App. 2009).  If error occurred, we then evaluate whether
sufficient harm resulted from the error to require reversal.  Abdnor,
871 S.W.2d at 731–32.

If
there is error in the court=s charge but the appellant
did not preserve it at trial, we must decide whether the error was so egregious
and created such harm that the appellant did not have a fair and impartial
trial—in short, that Aegregious harm@ has
occurred.  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(op. on reh=g); see Tex. Code Crim. Proc.
Ann. art. 36.19 (West 2006); Hutch v. State, 922 S.W.2d 166, 171 (Tex.
Crim. App. 1996).

Egregious
harm “‘is a difficult standard to prove and such a determination must be done
on a case-by-case basis.’”  Taylor v. State, 332 S.W.3d 483, 489 (Tex.
Crim. App. 2011) (quoting Hutch, 922 S.W.2d at 171).  In making an
egregious harm determination, Athe actual degree of harm
must be assayed in light of the entire jury charge, the state of the evidence,
including the contested issues and weight of probative evidence, the argument
of counsel and any other relevant information revealed by the record of the
trial as a whole.@  Almanza, 686 S.W.2d
at 171; see generally Hutch, 922 S.W.2d at 172B74. 
Errors that result in egregious harm are those “that affect the very basis of
the case, deprive the defendant of a valuable right, vitally affect the
defensive theory, or make a case for conviction clearly and significantly more
persuasive.”  Taylor, 332 S.W.3d at 490 (citing Almanza, 686
S.W.2d at 172).  The purpose of this review is to illuminate the actual, not
just theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.

IV. 
Any Error
in Not
Instructing Jury
on Stipulation

Did
Not Cause
Egregious Harm

 

          In
his first two points, Bishop argues that the trial court erred by failing to sua
sponte instruct the jury that his stipulation to his prior assault conviction could
only be used to invoke the jurisdiction of the court, not as evidence of his
guilt of the instant offense.  Bishop did not object to the alleged charge error,
but he argues on appeal that he suffered egregious harm from the error.  

Bishop
was charged with the third-degree felony of assault-family violence.  An
assault on a family member is a class A misdemeanor, but that same offense is
enhanced to a third-degree felony when “it is shown on the trial of the offense
that the defendant has been previously convicted of an offense under this
chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a [family
member].”  Tex. Penal Code Ann. § 22.01(b)(2)(A) (West 2011).  The family
assault provisions mirror the enhancement provisions provided for repeat DWI
offenders.  See id. § 49.09(b) (West Supp. 2011).  

A
jury charge must distinctly set forth the law applicable to the case and set
out all of the essential elements of the offense.  Martin v. State, 200
S.W.3d 635, 639 (Tex. Crim. App. 2006).  This requirement includes
jurisdictional elements.  Id.  In Martin, the court of criminal
appeals addressed whether a jury charge must instruct the jury to find the
jurisdictional element of two prior DWI convictions was satisfied by a
defendant’s formal written stipulation to the two prior DWI convictions.  Id.
at 637.  The court explained that, although a defendant’s stipulation to DWI enhancements
obviates the need for evidentiary proof of the element, the jury still must be
instructed on all the law concerning a felony DWI offense.  Id.  Specifically,
the jury charge should include (1) some reference to the jurisdictional element
of two prior DWI convictions, and (2) some reference to the defendant’s
stipulation and its legal effect of establishing the jurisdictional element.  Id.
at 640–41.  The court noted that there is no one correct manner to instruct the
jury and that the court “may give whatever other limiting instructions are
appropriate under the circumstances.”  Id. at 639.

Several
courts have applied Martin’s charge analysis concerning the use of
stipulations of prior DWI convictions in the felony DWI content to charges
concerning the use of stipulations of prior convictions in the repeat
assault-family violence context.  See Davila v. State, 346 S.W.3d 587,
591 (Tex. App.—El Paso 2009, no pet.); Sheppard v. State, 5 S.W.3d 338,
340 (Tex. App.—Texarkana 1999, no pet.) (treating prior conviction for family
violence offense as an essential element of the felony assault offense).  But
see State v. Cagle, 77 S.W.3d 344, 346 n.2 (Tex. App.—Houston [14th Dist.]
2002, pet. ref’d) (treating prior family violence conviction requirement as an
enhancement provision rather than an essential element of the felony charge); see
also Zavala v. State, No. 03-05-00051-CR, 2007 WL 135979, at *1 n.2 (Tex.
App.—Austin Jan. 22, 2007, no pet.) (mem. op., not designated for publication)
(recognizing the split between Sheppard and Cagle).

The State
does not dispute that Bishop’s prior assault-family violence conviction was a
jurisdictional element, not a sentencing enhancement, and that, consequently, Martin
applies to require a jury charge regarding Bishop’s stipulation to his prior
assault-family violence conviction.  See 200 S.W.3d at 639.  However,
the State argues that Martin does not require the trial court to sua
sponte include a limiting instruction in the jury charge.

Martin
states
that at least one approved method of charging the jury on a stipulation “would
include” a limiting instruction.  See id.  Martin does not,
however, expressly require a limiting instruction regarding a stipulation in
all cases.  See id.; see also Grisby v. State, No. 05-08-01351-CR,
2009 WL 2274101, at *1 (Tex. App.—Dallas July 30, 2009, no pet.) (not
designated for publication) (so stating).  Generally, limiting instructions
need not be included in the charge when a defendant fails to request an
instruction when the offensive evidence is admitted.  See Hammock v. State,
46 S.W.3d 889, 895 (Tex. Crim. App. 2001).

Here,
however, we need not decide whether the trial court erred by not sua sponte giving
a limiting instruction because the record reflects that, even assuming error,
Bishop was not egregiously harmed.  Because Bishop did not object to the charge
error, we reverse only for egregious harm.  See Almanza, 686 S.W.2d at
171; see also Tex. Code Crim. Proc. Ann. art. 36.19; Hutch, 922
S.W.2d at 171.

In
determining whether egregious harm exists, we note that without a limiting
instruction in the charge on Bishop’s stipulation, a danger exists the jury
might consider Bishop’s prior conviction as evidence of his guilt of the
charged assault in this case.  However, as the Dallas court of appeals pointed
out in Grisby, 

[A]ppellant arguably
also could have benefitted from the defect in the charge. Specifically, the
trial court’s failure to instruct on the stipulation both reduced the number of
references to [his] prior convictions, but also permitted the jury to acquit [him]
if the jury was not convinced beyond a reasonable doubt about the prior
convictions.

2009
WL 2274101, at *2.

Regarding
the harm in light of the state of the evidence, Bishop argues that the issue of
whether he assaulted Tammy was contested at trial because, prior to Bishop’s
trial, Tammy indicated her desire not to press charges, filled out an affidavit
of nonprosecution, and told Bishop’s attorney that Bishop had not touched her.  However,
evidence at trial showed that Tammy was scared to testify against Bishop for
fear of what he would do if he was not convicted.  On the day of trial, Tammy
told an assault-family violence intervention specialist with the Denton County
District Attorney’s office that she did not want to “be the one that puts
[Bishop] away,” that she was scared for her life, and that the actions for
which Bishop was on trial were “nothing compared to what usually happens.”  Tammy
testified that she and Bishop had gotten into an argument, that he had grabbed
her arms, that he had put his hands on her neck, but that she could not
remember if he had choked her because “it was so fast.”  Tammy’s brother Billy,
her sister, and Officer Luce all testified that Tammy had told them on the day
of the incident that Bishop had choked her, and they all testified that they
had seen red marks on her neck.

Considering
the harm in light of the argument of counsel, the record reveals that the State
explained the proper use of Bishop’s prior criminal history during voir dire:

The only issue . . .
that is in front of the jury at the guilt phase of the trial is did [the State]
prove these things beyond a reasonable doubt, yes or no?  That’s why in the
guilt phase of the trial, it is very, very rare for a jury to get to know
anything about a Defendant’s prior criminal history.  Usually you wouldn’t know
anything about the Defendant’s prior criminal history.

 

Assault[-]family
violence is one exception.  DWI is another one, okay?  We have certain crimes
that are what’s called enhanceable [sic], meaning they might start off as
misdemeanors, but then if you get convicted and do it again, at some point you
graduate from a misdemeanor to a felony.  Everybody with me?  

 

DWI is a great
example of that.  Your first DWI is a misdemeanor, your second DWI is a
misdemeanor, No. 3 is a third-degree felony. . . .  You have to be convicted on
the first two before you pick up a felony.  You graduate up.  Everybody with
me?

 

Assault[-]family
violence is the same way, the only thing is you only need one prior.  If you
have one prior conviction for assault[-] family violence and you commit another
assault[-]family[] violence, the next one is a third-degree felony.

 

. . . .

 

. . .[T]here are some
very important rules that go along with y’all getting to know that the person
in front of you has a conviction for a prior offense.  During the guilt phase
of the trial, the jury absolutely cannot consider the prior as evidence of
guilt on this one, okay?  Period, the end.  You cannot, as a juror, make the
leap of, well, he did it before, he must have done it.  Can’t do that.

 

. . . .

 

. . . At punishment,
you can consider that prior for all purposes, you can do anything you want with
it.  

 

At
the punishment phase is usually when you would find out everything with
somebody’s criminal history, whether they have a bunch or have none or
whatever.  But you can’t consider that prior for any purposes other than
jurisdictional purposes until that punishment phase.  Does that make sense? 

The
State asked the potential jurors whether they could not consider the prior
conviction as evidence of guilt, identified several potential jurors who would
not be able to set aside the prior conviction in determining guilt, and
obtained the remaining potential jurors’ agreement that they would be able to
set that conviction aside.

During
closing arguments, the State explained the stipulation to the jury: 

Number
one, for this to be a felony, there has to be a prior conviction for family
violence.  State’s Exhibit No. 11, right here, so that’s what this is.  Y’all
-- I don’t know if it’s been introduced into evidence, it’s the stipulation
showing he is the same Steven Bishop that was convicted in that prior that he
pled true to, when we read the indictment to y’all at the beginning of the
trial this morning.

So
that part is done.  It’s true, it’s been pled to, it’s been stipulated to.

And
defense counsel in his closing argument reminded the jurors about their
agreement not to consider Bishop’s prior assault conviction:  

Now, you all, under
oath during jury selection, stated that you would set that [prior conviction]
aside, that you would look at the evidence . . . that’s actually before you. 
So I will take you at your word that you will follow the law and take a look at
this case.

 

We’re here because of
a prior assault that [Bishop] pled true to, that he was convicted.  But that
was the DA’s discretion of how to file this suit.  They could have alleged a
choking, that’s enough to get us here in felony court.  They didn’t do that.  They
took the long way around to prove up the other one, that way you would see it. 


 

But
you’re here, and you said you would follow the law.  That’s what you need to
do.  

Reviewing
the record as a whole, considering any harm in light of the entire jury charge,
the state of the evidence, the argument of counsel, and any other relevant
information, we hold that, even assuming that the trial court erred by not sua
sponte including in the jury charge a limiting instruction regarding Bishop’s
stipulation, Bishop was not egregiously harmed.  See Hutch, 922 S.W.2d
at 172B74; Almanza,
686 S.W.2d at 171.  We overrule Bishop’s second point and, consequently,
overrule his first point, alleging only error, as moot.

V. 
Error in Punishment
Charge on Parole
Law

Did
not Cause
Egregious Harm

 

In
his third and fourth points, Bishop argues that the trial court erred by giving
the jury an incorrect instruction on parole law and that, although he did not
object to the jury charge error, he suffered egregious harm from this error.

          Section
4 of the Texas Code of Criminal Procedure article 37.07 requires the trial
court to provide the jury with one of three instructions, depending on the type
of offense, regarding parole eligibility in noncapital cases.  See Tex.
Code Crim. Proc. Ann. art. 37.07, § 4 (West Supp. 2011).  Section 4(b) provides
in part that in the penalty phase of a felony punishable as a first-degree felony
when a prior conviction has been alleged as an enhancement as provided by penal
code section 12.42(d), the jury charge on punishment shall include the
following instruction:

Under
the law applicable in this case, if the defendant is sentenced to a term of
imprisonment, he will not become eligible for parole until the actual time
served plus any good conduct time earned equals one-fourth of the sentence
imposed or 15 years, whichever is less.  Eligibility for parole does not
guarantee that parole will be granted.

Id.
art. 37.07, § 4(b) (emphasis added).  Section 4(c) provides in part that in the
penalty phase of a felony punishable as a second or third-degree felony when a
prior conviction has been alleged as an enhancement as provided by penal code
section 12.42(d), the jury charge on punishment shall include the following
instruction:

Under
the law applicable in this case, if the defendant is sentenced to a term of
imprisonment, he will not become eligible for parole until the actual time
served plus any good conduct time earned equals one-fourth of the sentence
imposed. Eligibility for parole does not guarantee that parole will be
granted.  [Emphasis added.]

See
id.
art. 37.07, § 4(c).  The State admits that section 4(b) was applicable here and
that the jury charge erroneously gave the section 4(c) instruction, thus
erroneously omitting the words “or 15 years, whichever is less” from the
parole-eligibility instruction.  Although conceding error, the State argues
that Bishop was not egregiously harmed by this error.

The incorrect
parole instruction misinformed the jury that the
one-fourth-of-the-sentence-imposed equation applied to determine Bishop’s
parole eligibility date for any sentence that the jury could give—between the
minimum of twenty-five years and the maximum of ninety-nine years or life. 
Under the correct parole law, however, the one-fourth-of-the-sentence-imposed
equation applies only when the sentence is less than fifteen years.  See id.
art. 37.07, § 4(b).  One-fourth of sixty is fifteen; thus, under section 4(b), any
sentence of sixty years or more would result in the same parole-eligibility
date—the date that the actual time served plus any good conduct time earned
equaled fifteen years.  See id. art. 37.07, § 4(b).  The jury gave
Bishop an eighty-year sentence.  Thus, under the erroneous jury charge given, the
jury was mistakenly led to believe that Bishop would not be eligible for parole
until his actual time served plus any good conduct time earned equaled one
fourth of the eighty year sentence, or twenty years; but under the correct
parole law, Bishop will become eligible for parole five years earlier—when
his actual time served plus any good conduct time earned equals fifteen years. 
See id. art. 37.07, § 4(b)–(c).  In fact, under the correct
parole law, Bishop would be eligible for parole in fifteen years if he received
any sentence between sixty and the maximum ninety-nine years or life.

One
possible result of the incorrect instruction is that the jury may have imposed
a longer sentence on the mistaken belief that it would extend Bishop’s parole-eligibility
date.  The argument then becomes had the jury received the correct parole-law instruction,
it may have assessed a lesser sentence of sixty to seventy-nine years, any of which
would have resulted in the same parole-eligibility date.  But this is only
theoretical, not actual, harm.  See Almanza, 686 S.W.2d at 174; Hooper
v. State, 255 S.W.3d 262, 272 (Tex. App.—Waco 2008, pet. ref’d) (“acknowledg[ing]
by speculation that the jury may have calculated that Hooper would have to
serve seven and one-half years before he could be released” but stating that “such
speculation leads only to insufficient theoretical harm, rather than actual
harm”).  On appeal, Bishop points out comments made during voir dire by
potential jurors to show that “the application of parole law was a concern among
the potential jurors.”  The following discussion occurred during voir dire:

POTENTIAL JUROR:  . .
. [B]ut what is life?  Life isn’t life.  Life is, like, 30 years.

 

[The State]:  Again,
there’s no way to accurately predict how long somebody has to sit, but anything
north of 60 is functionally the same.  There’s no 60, 70, 80, 90, life, in
terms of parole eligibility all those numbers are the same.  

 

POTENTIAL JUROR:  If
somebody got life and never got paroled, would they ever get out of prison?

 

[The State]:  No, the
only time we have somebody sentenced to prison -- murder without parole,
capital murder there’s only two punishments, death and life without parole, for
any other crime than capital murder. 

 

POTENTIAL JUROR: 
What’s life?

 

[The
State]:  You can consider the existence of the law is quarter time, but you
cannot go beyond that, how much time is somebody supposed to sit.

However,
this exchange during voir dire does not demonstrate that the jury based its
sentence on parole eligibility.  Moreover, the jury charge contained the
standard curative language admonishing the jury not to consider the extent to
which parole law might be applied to Bishop, and there was no indication that
the jury did not follow those instructions.[3]  See Tex. Code
Crim. Proc. Ann. art. 37.07, § 4(b); Igo v. State, 210 S.W.3d 645, 647
(Tex. Crim. App. 2006) (considering fact that standard curative language was
given as mitigating against finding egregious harm based on erroneous parole
law instruction); see also Waters v. State, 330 S.W.3d 368, 374 (Tex.
App.—Fort Worth 2010, pet. ref’d) (noting that juries cannot consider when a
defendant might be awarded parole but can properly determine how long a
term it wishes a defendant to serve before that defendant may become eligible
for parole).

Considering
the state of the evidence relating to punishment, the State presented evidence
of Bishop’s multiple prior convictions, including two for DWI, one for felony DWI,
one for possession of marijuana, one for driving with a suspended driver’s
license, one for a stolen check, one for felony possession of methamphetamine, and
five for assaults on either his former girlfriends or wife. Specifically
regarding the prior assaults, the State presented evidence of a 1997 conviction
for assault on his then-girlfriend by striking her mouth with a beer bottle; a
1998 conviction for assault on his then-wife for grabbing, pushing, or shoving
her; and two 2005 convictions for assault on his then-girlfriend Nicole Day.  Day
testified that Bishop had physically abused her several times a week during
their eighteen-month relationship; that he would wake her up by choking her or
picking her up by her throat if she did not hear the alarm clock, get up, and
make him breakfast; and that “his form of abuse is by taking your air away.”  Tammy
also testified at punishment and explained that Bishop had assaulted her on
many occasions and that he would typically choke her once or twice a week
during their year-and-a-half relationship.  The jury also heard about Bishop’s
drug and alcohol abuse and his various parole violations.

Bishop
makes much of the State’s closing arguments, impliedly encouraging the jury to
impose a life sentence to stop Bishop before he harmed another person, but the
State never mentioned parole law in its closing argument.  The jury ultimately
assessed a punishment less than the maximum allowed under the law.  See
Shavers v. State, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref’d)
(considering assessment of less than maximum punishment as mitigating factor in
egregious harm analysis of parole-law-instruction error).

          Considering
the record as a whole, the entire jury charge, the state of the evidence
against Bishop, the arguments of counsel, and voir dire, we hold that Bishop
was not egregiously harmed by the omission of the words “or 15 years, whichever
is less” in the parole law jury instruction.  We overrule Bishop’s fourth point
and, consequently, overrule his third point, alleging only error, as moot.

VI.  Conclusion

Having
overruled Bishop’s four points, we affirm the trial court’s judgment.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 19, 2012









[1] See Tex. R. App.
P. 47.4.





[2]See Tex. Penal Code
Ann. § 12.42(d) (West Supp. 2011) (providing for such increased punishment upon
showing two prior felony convictions).





[3]The jury charge
instructed,

It cannot accurately be predicted how the parole law
and good conduct time might be applied to this defendant if he is sentenced to
a term of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.

You may consider the existence of the parole law and
good conduct time.  However, you are not to consider the extent to which good
conduct time may be awarded to or forfeited by this particular defendant.  You
are not to consider the manner in which the parole law may be applied to this
particular defendant.

See Tex. Code Crim.
Proc. Ann. art. 37.07, § 4(b).